# STATE OF MICHIGAN

# COURT OF APPEALS

SCHOENECKERS INC.,

       Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

       Respondent-Appellee.

UNPUBLISHED
September 15, 2015

No. 321033
Tax Tribunal
LC No. 00-450419

Before: RONAYNE KRAUSE, P.J., and MURPHY and SERVITTO, JJ.

RONAYNE KRAUSE, J. *(dissenting)*

I respectfully dissent. As I read *Catalina Mktg Sales Corp v Dep't of Treasury*, 470 Mich 13; 678 NW2d 619 (2004), courts are to look at "the entire transaction," *id.* at 24, and although the situation at bar is less simple than the situation in *Catalina*, I conclude that there is only one transaction, not two. I conclude that the object of the transaction is functionally indistinguishable from the object of the transaction in *Catalina*: a sophisticated, dynamic, custom-targeted behavior modification service consisting of the distribution of incentives to individuals other than the provider's actual clients, which of necessity entails a transmission of physical objects. I believe that attempting to separate petitioner's interactions with its clients from petitioner's interactions with its clients' employees constitutes a failure to "look[] objectively at the entire transaction." Consequently, I would reverse.

The word "transaction" is undefined by any relevant statute, nor did our Supreme Court define it in *Catalina*. To "transact" is "'to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement.'" *Oberlies v Searchmont Resort, Inc*, 246 Mich app 424, 430; 633 NW2d 408 (2001), quoting *Random House Webster's College Dictionary* (1997). Obviously, Schoenckers interacts independently with its clients and with its clients' employees, but neither of those interactions has an independent existence. It is undisputed that Schoenckers's clients were not interested in disbursing gifts to their employees out of the pure goodness of their hearts, but rather because they wanted to incentivize those employees to perform better and maximize the clients' own profits. The vehicle for accomplishing this was Schoenckers's "business improvement programs." So far, I believe these facts are undisputed.

I differ from the majority because from my perspective, the ultimate disbursement of physical goods to Schoenckers's clients' employees is an integral and inseparable part of Schoenckers's interaction with its clients. As the majority notes, in *Catalina* there were

-1-

ostensibly two interactive occurrences: first, Catalina's contractual exchange with the manufacturers, and second, the issuance of a coupon to shoppers. Although it is, I suppose, *possible* to look at each of those occurrences in isolation, doing so would make no sense, because neither of them would have been meaningful without the other. I perceive no sound conceptual distinction between that situation and the situation at bar. The majority, correctly in my opinion, describes *Catalina* as "a single transaction that took place between Catalina and its manufacturer client, a part of which included the providing of coupons." The instant situation looks like a single transaction that took place between Schoenckers and its clients, a part of which included the providing of miscellaneous merchandise. Obviously, the merchandise here has more intrinsic value than the slips of paper in *Catalina*, and Schoenckers interacts more with its clients' employees than Catalina did with the shoppers. I do not believe that those facts fundamentally alter the nature of "the entire transaction." I disagree with the majority's conclusion that each interaction was "supported by its own consideration" simply because the clients' employees were afforded some measure of individual control over what they ultimately received.

I therefore conclude that the tribunal adopted a wrong legal principle, and consequently I would reverse.

/s/ Amy Ronayne Krause